UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUCIANO TONELLI, | ) |
| | ) |
| Plaintiff, | ) CASE NO.   C06-698-TSZ-JPD |
| | ) |
| v. | ) |
| | ) |
| SGT. KATY AUTRY, *et al.*, | ) REPORT & RECOMMENDATION |
| | ) |
| Defendants. | ) |
| | ) |

## INTRODUCTION

Plaintiff is a Washington state prisoner currently incarcerated in the Washington State Penitentiary in Walla Walla, Washington. He was formerly incarcerated in the Monroe Correctional Complex ("MCC") in Monroe, Washington. While incarcerated in MCC, plaintiff was involved in an altercation with another inmate after the inmate had made comments regarding plaintiff's homosexuality. Plaintiff filed the instant lawsuit under 42 U.S.C. § 1983, alleging that Sergeant Katy Autry, with whom he alleges he had discussed the comments prior to the altercation, had failed to take adequate measures to protect him. Plaintiff also alleges that after the altercation, he received inadequate medical care from Nurse Stephanie Russell. Plaintiff names both Sgt. Autry and Nurse Russell as defendants in this action. Defendants have filed a motion for summary judgment, to which plaintiff has filed a response. Having reviewed the parties' submissions, the Court recommends that defendants' motion be denied and that this matter be set for trial.

REPORT & RECOMMENDATION
PAGE - 1

1 BACKGROUND

2 Plaintiff and defendant have different versions of the facts underlying this lawsuit.[1] Both
3 parties agree, however, on the fundamental outline of the incident in question. Plaintiff was
4 incarcerated in MCC as part of the general population from approximately September 9, 2004 until
5 October 9, 2004.[2] (Doc. #59, Declaration of Luciano Tonelli at 1). During that time, plaintiff met
6 between four and seven times with Sgt. Katy Autry and discussed with her his fears about one
7 particular inmate, Michael Fancher, during at least three of these meetings. (Doc. #59, Ex. 1,
8 Deposition of Luciano Tonelli at 30-32). Plaintiff told Sgt. Autry that inmate Fancher verbally
9 harassed him "[p]retty much every other day." (*Id*. at 27). According to plaintiff, the verbal
10 harassment escalated into physical threats after approximately two weeks. (*Id*. at 28). Fancher would
11 lunge at plaintiff, curse at him, and tell him, "you better not rat on me." (*Id*. at 29). Plaintiff claims
12 that he told Sgt. Autry about these incidents and requested either to be transferred to another prison or
13 to be put in protective custody. (*Id*. at 29-32).

14 Sgt. Autry, in response to interrogatories posed to her by plaintiff, states that she has no
15 recollection of plaintiff telling her about verbal harassment or physical threats from inmate Fancher.
16 (Doc. #55, Ex. 2 at 5). She states that plaintiff's "complaints were generally vague, for example that
17 another inmate had looked at him wrong." (*Id*.) She also states that plaintiff was not cooperative in
18 providing further information. (*Id*. at 3).

19 Plaintiff was neither transferred to another prison nor put into protective custody. On October
20 9, 2004, plaintiff and inmate Fancher had an altercation in the prison dining hall. Plaintiff and a
21 witness, Scot Austin, state that Fancher attacked plaintiff without provocation and that plaintiff fought

---

[1] Plaintiff's version is largely based upon his own declaration and deposition, and an affidavit submitted by an inmate who witnessed the incident, Scot Austin. (Dkt. #59, Declaration of Luciano Tonelli, Ex. 1 and Ex. 3). Defendants' version is based upon the deposition of plaintiff, answers to interrogatories filed by Sgt. Autry, and the declaration of Stephanie Russell. (Dkt. #55, Ex. 1-3).

[2] The record does not disclose the nature of plaintiff's conviction nor the length of his sentence.

REPORT & RECOMMENDATION
PAGE - 2

1  back only to defend himself. (Doc. #59, Ex. 1 at 36; Ex. 3 at 2). The fight was quickly broken up by
2  guards and plaintiff was taken to the Administrative Segregation wing of the prison. (Doc. #59,
3  Declaration of Luciano Tonelli at 2).

4      Plaintiff had fallen during the fight and had a bump on his head. Once in Administrative
5  Segregation, plaintiff was examined by Nurse Russell. She detected the bump on plaintiff's head, but
6  saw no bleeding. (Doc. #55, Ex. 3 at 2). Nurse Russell performed a neurological test on plaintiff by
7  "checking his grip and checking his eyes." (*Id*.) She found that other than the bump on his head,
8  plaintiff's exam was normal. (*Id*.) Plaintiff states, in contrast, that Nurse Russell conducted a cursory
9  exam and failed to properly diagnose his injury. (Doc. #59, Ex. 1 at 44). In particular, plaintiff states
10 that Nurse Russell failed to note that plaintiff had a history of epilepsy and failed to heed his own
11 warning that he felt that a seizure was imminent. (*Id*.) Plaintiff states that about ten minutes after
12 Nurse Russell left, he had a seizure, fell to the floor, and permanently injured his face. (*Id*. at 46).

13     On May 17, 2006, plaintiff submitted the instant civil rights complaint. The Court declined to
14 serve the original complaint on defendants and granted plaintiff leave to amend. (Doc. #8). Plaintiff
15 filed an amended complaint on June 27, 2006. (Doc. #11). On July 19, 2006, the Court dismissed one
16 defendant and directed the Clerk to serve the remaining defendants. (Doc. #16).

17     On August 25, 2006, plaintiff submitted a second amended complaint, which the Court
18 permitted him to file because defendants had not yet answered the original complaint. (Doc. #23).
19 Defendants filed their answer on September 19, 2006. (Doc. #27). After a period of discovery,
20 defendants filed a motion for summary judgment on June 26, 2007. (Doc. #55). Plaintiff, after
21 receiving an extension of time, filed his response on August 23, 2007. (Doc. #59). Defendants have
22 not filed a reply, and the matter is now ready for review.

23 DISCUSSION
24 Standard for Summary Judgment

25     Summary judgment is proper only where "the pleadings, depositions, answers to
26 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

REPORT & RECOMMENDATION
PAGE - 3

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. "When the moving party has carried its burden under Rule 56©), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, __U.S.__, 127 S. Ct. 1769, 1776 (2007) (internal citation and quotation omitted). Conclusory allegations in legal memoranda are not evidence, and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *See Project Release v. Prevost,* 722 F.2d 960, 969 (2nd Cir. 1983).

In order to sustain a cause of action under 42 U.S.C. §1983, plaintiff must show (I) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the Complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Plaintiff's amended complaint sets forth two claims: (1) Sgt. Autry violated plaintiff's constitutional rights by failing to protect him from inmate Fancher's attack; and (2) Nurse Russell provided constitutionally inadequate medical care to plaintiff following the attack.[3] The Court will examine each claim in turn.

/

---

[3] Plaintiff's amended complaint also had a third claim against a corrections officer; however, that claim was dismissed on December 20, 2006 by the Court after plaintiff could not locate the officer. (Doc. #44).

REPORT & RECOMMENDATION
PAGE - 4

1. Plaintiff's Claim Against Sgt. Autry

Plaintiff first contends that Sgt. Autry violated her duty under the Eighth Amendment to protect plaintiff from physical abuse. *See Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, plaintiff must establish that Sgt. Autry was deliberately indifferent to serious threats to plaintiff's safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To demonstrate that Sgt. Autry was deliberately indifferent, plaintiff must show that she knew of and disregarded an excessive risk to his safety. 511 U.S. at 837. To prove knowledge of the risk, plaintiff may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Id.* at 842.

Here, defendants concede that Sgt. Autry met with plaintiff several times before the fight with inmate Fancher, but assert that she does not recall plaintiff ever mentioning that he had been verbally threatened or physically assaulted by Fancher. (Doc. #55, Ex. 2 at 5). Plaintiff counters, in his deposition and declaration, that he spoke to Sgt. Autry of threats and intimidation by inmate Fancher on at least three occasions. (Doc. #59, Ex. 1, Deposition of Luciano Tonelli at 30-32). Plaintiff's account is corroborated by inmate Austin. (Doc. #59, Ex. 3 at 1). Defendants, because they did not file a reply, have not challenged any of the material submitted by plaintiff in opposition to their motion for summary judgment.

In light of the above disparity between plaintiff's and Sgt Autry's descriptions of the content of their meetings, the Court concludes that there is a genuine issue of material fact regarding plaintiff's first claim. Plaintiff's version of the facts, if accepted by a jury, would establish a "failure to protect" claim under the Eighth Amendment. *See, e.g., Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991) (en banc). Accordingly, defendants' motion for summary judgment on the first claim should be denied.

2. Plaintiff's Claim Against Nurse Russell

Plaintiff next contends that Nurse Russell violated her duty under the Eighth Amendment to provide adequate medical care to plaintiff. Mere indifference, even if it rises to the level of medical

1  malpractice, will not support a cause of action under the Eighth Amendment. *See Broughton v. Cutter
2  Labs,* 622 F.2d 458, 460 (9th Cir. 1980) (per curiam); *see also Estelle v. Gamble*, 429 U.S. 97, 106-07
3  (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a
4  prisoner."). Rather, to successfully show that he received constitutionally inadequate medical care,
5  plaintiff must allege facts showing that prison officials acted with deliberate indifference towards his
6  serious medical needs. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

7  Here, once again, there are crucial differences between plaintiff's description of the treatment
8  he received from Nurse Russell and her description. According to Nurse Russell, plaintiff suffered
9  from a bump on the head and that was all. She states that he neither exhibited nor told her of any
10 other symptoms. (Doc. #55, Ex. 3 at 2). In sharp contrast, plaintiff states that Nurse Russell
11 conducted a cursory exam and ignored his own warning that he had epilepsy and that a seizure was
12 imminent. (*Id*.) Because these two versions of the treatment cannot be reconciled, the Court
13 concludes that there is a genuine issue of material fact regarding plaintiff's second claim. Plaintiff's
14 version of the facts, if accepted by a jury, would establish a claim of deliberate indifference to medical
15 needs. Accordingly, defendants' motion for summary judgment on the second claim should also be
16 denied

## CONCLUSION

18 For the foregoing reasons, defendants' motion for summary judgment should be denied.
19 Further, to assist plaintiff in preparing for trial, the Court recommends appointing counsel to represent
20 him pursuant to 28 U.S.C. § 1915(e). A proposed Order accompanies this Report and
21 Recommendation.

22 DATED this 1st day of October, 2007.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge